JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: IVAN RENE MOORE,<br><br>Debtor | Case No. CV 16-09540-AB<br><br>Bankruptcy Case No. 2:16-bk-24226-ER |
| IVAN RENE MOORE,<br><br>Appellant,<br><br>v.<br><br>UNITED STATES TRUSTEE FOR REGION 16,<br><br>Appellee. | **ORDER AFFIRMING BANKRUPTCY COURT'S ORDER** |

Appellant Ivan R. Moore ("Appellant" or "Moore") appeals the Bankruptcy Court's December 13, 2016 "Order Dismissing Chapter 11 Case With 180-Day Bar To Refiling Pursuant to 11 U.S.C. § 1112(b)." Appellant filed his Opening Brief on March 31, 2017 ("Opening Br.," Dkt. No. 23.) Appellee United States Trustee for Region 16 ("Appellee" or "Trustee") filed its Response on May 3, 2017 ("Appellee Br.," Dkt. No. 31), Secured Creditor Well Fargo Bank ("Wells Fargo") filed its Response on May 5, 2017 ("Secured Creditor Br.," Dkt. No. 41), and Appellant filed

1.

his Reply brief on June 12, 2017 ("Reply," Dkt. No. 44). After considering the papers filed in connection with the appeal, the Court finds this matter appropriate for resolution without oral argument. Fed. R. Bank. P. 8019(b)(3). For the following reasons, the Court **AFFIRMS** the Order below.

## I. BACKGROUND

Moore is a broadcaster, producer, and musician. (United States Trustee Appendix ("UST App.") at 54.) He owns multiple businesses in the music industry. (*Id.* at 15, 33.) Appellant filed for bankruptcy three times before this recent attempt—twice in his own name in 2002 and 2003, and once as Radio Multi-Media Investments in 2011. (*Id.* at 98-112.)

On October 27, 2016, Moore filed this pro se voluntary petition for chapter 11 bankruptcy in the Central District of California. (*Id.* at 14.) A month after Moore filed the operative chapter 11 bankruptcy petition, the Trustee moved to dismiss the Appellant's bankruptcy case or convert it to chapter 7 under 11 U.S.C. § 1112(b). (UST App. at Tab 3.) On December 13, 2016, the bankruptcy court held a hearing on Appellee's motion. (*Id.* at 477.) The bankruptcy court's tentative view was to convert Appellant's case to a chapter 7 bankruptcy. (*Id.* at 479.) At the hearing, the Trustee supported the bankruptcy court's tentative view. (*Id.* at 480.) However, Wells Fargo asked the bankruptcy court to dismiss the case, noting Moore's litigious history and the risk that he would interfere with the chapter 7 trustee's exercise of the trustee's fiduciary duties. (*Id.* at 485-87.)

This was not Moore's first encounter with Wells Fargo. In 2015, the United States District Court for the Eastern District of Wisconsin entered a $7.1 million dollar judgment against Moore and in favor of Wells Fargo. (*Id.* at 150.) This judgment allows Wells Fargo to replevin Moore's intangible property, personal property, royalties, profits, and other collateral. (*Id.*) The judgment also allows Wells Fargo to foreclose on two properties owned by Moore's business. (*Id.*) Because of this judgment, Wells Fargo is a secured creditor of Moore. Moreover, four days after

filing this suit, Moore filed an adversarial proceeding against Wells Fargo and 18 other named individuals and entities. (*Id.* at Tab 6.) Moore's basic allegation was that Well Fargo obtained a prior judgment against him through fraud, and the other individuals and entities were depriving him of his property. (*Id.* at 364-69.)

The attorney for Kimberly Martin-Bragg Barbour ("Barbour"), Moore's former romantic partner, also attended the hearing. (*Id.* at 498.) Moore listed Barbour as a creditor, but did not inform her that he did so. (*Id.*) Barbour only about Moore's bankruptcy shortly before this hearing. (*Id.*) Barbour had also filed for chapter 7 bankruptcy, thus making Appellant's omission more troubling. (*Id.*) At the hearing, Barbour's counsel noted that she supported the Trustee's position. (*Id.*)

The bankruptcy court ultimately dismissed Moore's case with a 180-day refiling bar. (*Id.* at 491.) In its order, the bankruptcy court noted that it had numerous concerns with Moore. Among other things: (1) Moore had failed to provide important documents required when filing for a chapter 11 bankruptcy; (2) Moore was unlikely able to confirm a plan; and (3) Moore's history of vexatious litigation. (*Id.* at 497.) Because Moore failed to follow basic instructions about submitting documents to the Trustee and because his filings were incomplete, the bankruptcy court concluded that chapter 11 reorganization would not be possible. (*Id.*) Moreover, the bankruptcy court found that Moore acted in bad faith by not listing Barbour as a creditor, even though he filed a dischargeability action against her. (*Id.*) The bankruptcy court concluded that Moore would not be able to provide any meaningful distribution to his creditors. (*Id.* at 499.)

**II.  ISSUES ON APPEAL**

Appellant's Brief recites the following issues on appeal:

1. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in the dismissal of this debtor's **Chapter 11** for cause?

2. Whether the Bankruptcy Court committed an error of law or an

abuse of discretion is disregarding Debtor's second Judgment for **$4,000,000.00** plus for his plan of reorganization as stated by debtor at **314 (a) Creditor meeting?**

3. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in dismissing Appellant's Chapter (11) and failing to consider that the majority of the creditors **did not** want dismissal and supported reorganization of the estate?

4. Whether the Court erred or abused discretion in ignoring Debtor's pursuit of his fiduciary duties as debtor in possession?

5. Whether the bankruptcy Court committed an error of law or an abuse of discretion when the Court's Order uses another unrelated case information to support the dismissal?

6. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in dismissing the debtor's Chapter 11 because the Court erroneously state that the debtor was "serial bankruptcy filer," using another party's bankruptcy to support this statement?

7. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in dismissing the debtor's Chapter 11 bankruptcy for **bad faith** failure to list a party as a creditor on schedules, when that party failed to meet the definition of a creditor under 11 U.S. code section 101(10)?

8. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in dismissing the debtor's Chapter 11 bankruptcy because he was erroneously declared vexatious in the State Court and that issue is pending on appeal before the California Court of Appeals?

9. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in dismissing the debtor's Chapter 11 bankruptcy

deeming his adversarial complaint outlandish when in fact there are documentary evidence that supports the allegations plead in the complaint, and fail to permit any amendment of the complaint?

10. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in dismissing the debtor's Chapter 11 bankruptcy for failure to permit Appellant one opportunity to remedy any of the purported deficiencies in the US Trustee's Chapter 11 Notices and Guides?

11. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in dismissing the debtor's Chapter 11 bankruptcy in violation of debtor's due process and equal protection rights by depriving Debtor one opportunity to amend

12. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in dismissing the debtor's Chapter 11 bankruptcy in violation of debtor's due process and equal protection rights by giving no consideration to Debtor's evidence and relying on hearsay statements from third parties.

13. Whether the Bankruptcy Court committed an error of law or an abuse of discretion in disregarding the income from the debtor's night club in Milwaukee WI. which also generated in excess of $170,000.00 (One Hundred and Seventy Five Thousand dollars) per month.

Opening Br. pp. 2-5.

Eleven of the thirteen issues can be distilled to this: whether the bankruptcy court abused its discretion in dismissing Moore's chapter 11 bankruptcy case and barring him from refiling for 180 days. The last two issues are whether the bankruptcy court violated Moore's due process and equal protection rights.

**III. STANDARDS OF REVIEW**

The bankruptcy court's decision to dismiss a case is reviewed under an abuse of

5.

discretion standard.  *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1223 (9th Cir. 1999).  A two-part test determines whether the bankruptcy court abused its discretion.  *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).  First, the appellate court considers de novo whether the bankruptcy court applied the correct legal standard.  *Id.*  Then the appellate court reviews the bankruptcy court's fact findings for clear error.  *Id.* at 1262 & n.20.  *See also Eisen v. Curry (In re Eisen)*, 14 F.3d 469, 470 (9th Cir. 1994) (the bankruptcy court's finding of "bad faith" is reviewed for clear error).

An appellate court must affirm a bankruptcy court's fact findings unless they are illogical, implausible, or without support in the record, i.e. clearly erroneous.  *Hinkson*, 585 F.3d at 1262.  A factual determination is clearly erroneous if it lacks adequate evidentiary support or was induced by an erroneous view of the law.  *Wall St. Plaza, LLC v. JSJF Corp. (In re JSJF Corp.)*, 344 B.R. 94, 99 (9th Cir. BAP 2006).

Whether the bankruptcy court's procedures comport with due process is reviewed de novo.  *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir. 2009), *abrogated on other grounds by Gugliuzza v. Fed. Trade Comm'n (In re Gugliuzza)*, 852 F.3d 884 (9th Cir. 2017) .

**IV. DISCUSSION**

**A. Dismissal Was Appropriate**

**1. The Court Applied the Correct Legal Standard.**

The Court plainly applied the correct legal standard.  11 U.S.C. 1112(b)(1) provides:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the

court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Dismissal of a chapter 11 case under 11 U.S.C. § 1112(b) requires a two-step analysis. "First, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'" *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (B.A.P. 9th Cir. 2006) (quoting *Ho v. Dowell (In re Ho)*, 274 B.R. 867, 877 (B.A.P. 9th Cir. 2002)). In considering the second prong, "the court must consider the interests of *all* of the creditors." *Shulkin Hutton, Inc. v. Treiger (In re Owens)*, 552 F.3d 958, 960 (9th Cir. 2009) (quoting *Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.)*, 14 F.3d 240, 243 (4th Cir.1994)).

11 U.S.C. § 1112(b)(4) provides an enumerated list of actions that give cause. One of the relevant enumerated factors is an "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by an rule applicable to a case under this chapter." 11 U.S.C. § 1112(b)(4)(F). However, bankruptcy courts may look beyond 11 U.S.C. § 1112(b)(4) and "consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." *Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001) (quoting H.R. No. 95-595, 95th Cong., 1st Sess. 405-06 (1977)). Specifically, the Ninth Circuit has held acting in bad faith is "cause" to dismiss or convert a case. *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994). A bankruptcy case is filed in bad faith if it was brought for "tactical reasons unrelated to reorganization." *See id.*

The bankruptcy court applied the right legal standard because it addressed both issues—whether there was cause and what was the best interest of the creditor. First, the bankruptcy court found cause. It found that the Appellant did not comply with the

7.

Trustee's reporting requirements, did not accurately complete his schedules, has a history of vexatious litigation, and acted in bad faith in not scheduling Barbour as a creditor. (UST App. at 497.) Second, the bankruptcy court concluded that dismissal was in the "best interest of the creditors and the estate." (*Id.* at 498.) Appellant provided three declarations that purportedly show conversion or dismissal was not in the creditors' best interest. (*Id.*) However, the bankruptcy court gave these declarations little weight because they "consist merely of conclusory statements asserting that the creditors believe [Moore] can successfully confirm a plan." (*Id.*) The declarations did not set forth facts or evidence justifying the creditors' belief that plans could confirm. (*Id.*) Therefore, the bankruptcy court concluded that based on Appellant's past failure to comply, there was no reasonable likelihood that the plan would confirm. (*Id.*) Thus, conversion or dismissal was mandatory because that was in the best interest of the creditors.

### 2. The Bankruptcy Court Did Not Commit Clear Error in its Fact Finding.

Appellant's challenges to the Court's findings are unavailing. The Court found cause to dismiss for "failure to timely comply with the [Trustee's] reporting requirements, failure to accurately complete his schedules, past history of filing vexatious litigation, bad faith to schedule Barbour as a creditor, and the Debtor's filing of the frivolous action against Wells Fargo and other defendants." (*Id.* at 498.) These findings are supported by facts in the record. There is evidence that Moore consistently failed to submit the correct forms in a timely manner. (*E.g., id.* at 86, 92.) Failure to submit the proper documentation to the Trustee was sufficient cause to dismiss Appellant's case. 11 U.S.C. § 1112(b)(4)(F). However, the bankruptcy court provided additional bases for dismissal. For instance, it also found that Moore was unlikely to conform to a reorganization plan. (*Id.* at 498.) In making this finding, it relied on Appellant's history of vexatious litigation and Moore's failure to follow directions in submitting court documents. (*Id.* at 498.)

Notably, the bankruptcy court found that Moore acted in bad faith by not listing Barbour as a creditor. The bankruptcy court observed that Moore filed a dischargeability action against her even though he failed to list her as a creditor on his schedule. (*Id.* at 498.) Contrary to Moore's suggestion, (Opening Br. at 24), the bankruptcy court did not commit clear error by concluding that Appellant acted in bad faith by not listing Barbour on his schedule, even though she allegedly owes him more than $3 million. This conclusion is supported by the representation of Barbour's counsel at the December 13, 2016 hearing. (*Id.* at 487-88.)

Moore faults the bankruptcy court in his opening brief for not extending deadlines to allow him to correct filing deficiencies. (Opening Br. pp. 18-19.) He relies on *In re Express One*, 194 B.R. 98 (Bankr. E.D. Tex. 1998). But in that case, the court gave the debtor an extension after concluding that the debtor had been making a diligent effort to reorganize. *Id.* at 101. In contrast, the bankruptcy court here found that Moore was not making any serious attempts to get his affairs addressed. (UST App. at 498-99.)

Appellant also argues that the majority of his creditors did not want dismissal and supported reorganization. (Opening Br. p. 3.) Moore submitted declarations from three creditors supporting his position. (UST App. at 498.) The bankruptcy court considered the declarations. (*Id.*) Nevertheless, the bankruptcy court found those declarations are faulty because they did not set out the basis for why those creditors believed reorganization was feasible. (*Id.*) This conclusion was not clearly erroneous.

Finally, the bankruptcy court did not commit clear error by placing a 180-day bar against re-filing. The bankruptcy court relied on ample evidence to conclude that Moore could not afford to fund additional litigation. It noted that Wells Fargo holds a $7.1 million judgment against Appellant. (*Id.* at 498.) Moreover, the bankruptcy court noted that Moore's only asset that could yield a distribution to creditors is his judgment against Barbour. (*Id.*) However, Moore would have a hard time satisfying his judgment with his judgment against Barbour because she had filed a chapter 7

bankruptcy. (*Id.* at 498-99.)

The bankruptcy court's factual findings were supported by objective facts from the record. The bankruptcy court's conclusions were neither illogical, implausible, nor unsupported; thus, they must be affirmed.

### B. Appellant's Constitutional Rights Were Not Violated

Moore's equal protection and due process challenges also fail. The Equal Protection Clause requires the government to treat all similar situated people alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). If the government treats people differently based on a protected classification, like race, national origin, or gender, the government's classification is presumably unconstitutional. *See id.* at 440. But if the government treats similarly situated individuals differently based on a non-protected classification, its action is subjected to rational basis review. *Id.* The government prevails on rational basis review if its action is rationally related to furthering a legitimate state interest. *Merrifield v. Lockyer*, 547 F.3d 978, 989 (9th Cir. 2008).

There is no equal protection violation here. First, Moore was not discriminated against based on a protected classification.[1] Therefore, his equal protection challenge is reviewed under rational basis review. *Cleburne*, 473 U.S. at 440. And the government plainly has a legitimate interest in treating bankruptcy filers differently based on whether they properly submit the necessary paperwork. *See F.C.C. v. Beach Commc'n Inc.*, 508 U.S. 307, 315 (1993) (explaining that those attacking the rationality of legislative classification have the burden to negate every conceivable basis which may support the law). It must distinguish who may successfully complete bankruptcy requirements so that it can protect creditors' interests.

---

[1] Appellant suggests in passing that he believes the bankruptcy court treated him differently because he is African-American. (Opening Br. at 36.) However, Moore does not provide any evidence of racial discrimination. Thus, the Court does not consider this statement.

10.

Finally, Moore did not suffer a due process violation. 11 U.S.C. § 1102(1)(A) ("after notice and a hearing" means "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."); *Tolbert v. Fink*, 255 B.R. 214, 217 (B.A.P. 8th Cir. 2000). The bankruptcy court gave him a hearing, at which he appeared and argued. (UST App. at 479.) This satisfies the Due Process Clause's requirements. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 246 F. Supp. 3d 680, 694 (E.D. N.Y. 2017) (holding that there is no due process violation when company had actual notice of bankruptcy). To be sure, the bankruptcy court also issued a written decision explaining its reasoning for dismissing his case and placing a 180-day refiling bar.

V. **CONCLUSION**

For the foregoing reasons, the Order is **AFFIRMED.**

Dated: January 5, 2018 _____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

CC: Bankruptcy Court and BAP

11.